# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 C 5173 | DATE | 1/5/2004 |
| CASE TITLE | Nadia Shaba vs. Intraaction Corp. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the reasons set out in this opinion, this Court finds that there is no genuine issue of material fact that would call IntraAction's lack of liability into question. Intra-Action's motion is therefore granted, and this action is dismissed. (21-1)

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JAN 0 6 2004 | |
| | Notified counsel by telephone. | | date docketed | 32 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 1/5/2004 | |
| SN | courtroom deputy's initials | U.S. DISTRICT COURT CLERK '04 JAN -6 AM 3:54 Date/time received in central Clerk's Office | date mailed notice SN mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF ILLINOIS
                         EASTERN DIVISION

NADIA SHABA,                    )
                                )
            Plaintiff,          )
                                )
     v.                         )     No. 02 C 5173
                                )
INTRAACTION CORP.,              )
                                )
            Defendant.          )

                   MEMORANDUM OPINION AND ORDER

     Nadia Shaba ("Shaba") has sued her former employer

IntraAction Corporation ("IntraAction"), asserting that it should

be held liable for creating a hostile work environment in

violation of Title VII (42 U.S.C. §2000e-2). IntraAction has

responded with a Fed. R. Civ. P. ("Rule") 56 motion for summary

judgment, and both sides have complied with this District Court's

LR 56.1. For the reasons set out in this opinion, this Court

finds that there is no genuine issue of material fact that would

call IntraAction's lack of liability into question. Intra-

Action's motion is therefore granted, and this action is

dismissed.

                     Summary Judgment Standards

     Familiar Rule 56 principles impose on movant IntraAction the

burden of establishing the lack of a genuine issue of material

fact (Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).

For that purpose this Court must "consider the evidentiary record

in the light most favorable to the non-moving party...and draw

all reasonable inferences in his favor" (Lesch v. Crown Cork & Seal Co., 282 F.3d 467, 471 (7th Cir. 2002)). And Pugh v. City of Attica, 259 F.3d 619, 625 (7th Cir. 2001) has echoed the teaching of Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986):

> A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

As with any summary judgment motion, this Court accepts nonmovant Shaba's version of any disputed facts, but only so long as it is supported by record evidence. What follows in the Facts section is culled from the parties' submission in those terms.

### Facts[1]

IntraAction hired Shaba in January 2001[2] as a receptionist and office assistant on a temporary basis (I. St. ¶6). Shaba initially intended to move to Arizona with her fiancé in September, but when her plans changed she informed her "team leader" Michael Strojny ("Strojny") that she intended to stay (S.

---

[1] This opinion cites to IntraAction's LR 56.1(a)(3) statement as "I. St. ¶ --." Shaba's response to the I. St. assertions and Shaba's affidavit are respectively cited as "S. St. ¶ --" and "S. Aff. ¶ --" (though where Shaba does not dispute IntraAction's version, an "I. St." citation alone suffices). Although Shaba has also proffered a "Statement of Additional Undisputed Facts," that document has not been cited here because it does not contain any statement that poses a material factual issue.

[2] Because all of the relevant events occurred in 2001, this opinion hereafter omits the year designation when referring to dates during that year.

St. ¶28). IntraAction gave her "permanent" employment status in March to qualify her for certain fringe benefits (I. St. ¶10).

Strojny was hired as the company accountant (to work in the same office area as Shaba) in February, and according to Shaba he almost immediately began to target her with statements and actions of a sexual nature (I. St. ¶¶14-26).[3] Shaba recorded several incidents in a personal log and talked with a few co-workers about those incidents, but she did not alert IntraAction itself to any claim of sexual harassment until the morning of April 11, when she requested a meeting with IntraAction President John Lekavich ("Lekavich") to discuss Strojny's behavior (I. St. ¶¶13, 33, S. Aff. ¶35). Lekavich had called a company-wide meeting for that same morning, during which he discussed among other topics the company's profit-sharing plan and its policy on sexual harassment (S. Aff. ¶37).

When Shaba met with Lekavich personally after the company meeting, but even before she raised the topic of sexual harassment, Lekavich told her (1) that Strojny had never relayed a message that she intended to stay on past September and (2) that Lekavich was unhappy with her performance and did not intend

---

[3] Although IntraAction disputes the seriousness in harassment terms of the conduct ascribed to Strojny (all of which is treated as having occurred for Rule 56 purposes), there is no need to get into the details in that respect: It is also assumed for purposes of the present motion that the conduct was sufficiently severe and pervasive to constitute potentially actionable sexual harassment.

to keep her as an employee past September (I. St. ¶31). Shaba then told Lekavich of her concerns about Strojny's conduct, and Lekavich said he would investigate the issue (id. ¶33).

After Lekavich met with both Strojny and Shaba he prepared an agreement that both signed, each promising to act in a professional manner toward the other and agreeing to discuss only business matters with the other (I. St. ¶44). Lekavich also moved Shaba to the other side of the office building and allowed her to leave work early--though she was still paid a full day's wages (id. ¶47). Shaba admits that the sexual harassment stopped after those steps were taken (id. ¶46), but on April 27 Strojny did attempt to carry on a conversation with her that was not related to business matters (although Shaba admits it was not sexually harassing) (S. St. ¶50). Shaba felt very upset by that encounter and requested a one week leave of absence, which Lekavich granted (I. St. ¶51).

But Shaba failed to return the next week (I. St. ¶52). She claims she came in early one morning during her week off and put a note on Lekavich's desk stating that she needed more time to gather herself, although she does not claim ever to have spoken with Lekavich or otherwise to have received approval for the additional time off (S. Aff. ¶51, S. St. ¶52). Lekavich fired Shaba on May 12 for abandoning her job, and he claims he never received (and he certainly never approved) the additional request

(S. St. ¶53).

Shaba then filed a timely hostile work environment charge with EEOC, which issued a right-to-sue letter on April 24, 2002. Shaba instituted this action on July 22, 2002, within 90 days after receiving the EEOC letter.

## Standards for Sexual Harassment Claims

Title VII deems it unlawful for an employer or any of its agents (42 U.S.C. §2000e(b)) "to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin" (42 U.S.C. §2000e-2(a)(1)). Quantock v. Shared Marketing Servs. Inc., 312 F.3d 899, 903 (7th Cir. 2002) (per curiam) teaches that sexual harassment falls within the ambit of Title-VII-prohibited conduct if an individual can establish[4] that:

> (1) she was subjected to unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature; (2) the conduct was severe or pervasive enough to create a hostile work environment; (3) the conduct was directed at her because of her sex; and (4) there is a basis for employer liability.

Quantock, id. (citing earlier caselaw) goes on to define that

---

[4] At this stage, of course, Shaba need not "establish," "prove" or "show" anything, but must merely demonstrate that a genuine issue exists as to a material fact. This opinion will nonetheless employ one or several of those terms, both as a matter of convenience and because those are the words most often used in the caselaw. But in doing so this Court still imposes the lesser Rule 56 burden on Shaba.

second factor in terms of "conduct so severe or pervasive as to alter the conditions of her employment and create an abusive work environment"--one that is "both objectively and subjectively offensive." IntraAction argues that Shaba has failed to demonstrate a material issue of fact on both the second and fourth elements.

When evaluating whether a workplace is sufficiently hostile or abusive to violate Title VII, courts must consider all of the surrounding circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance" (Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)). For that purpose the environment must be both objectively and subjectively offensive: Shaba must demonstrate not only that she actually perceived her workplace as hostile or abusive, but also that a reasonable person in her position would have done so (Faragher v. City of Boca Raton, 524 U.S. 774, 787 (1998)).

Hostetler v. Quality Dining, Inc., 218 F.3d 798, 807 (7th Cir. 2000), quoting Baskverville v. Culligan Int'l Co., 50 F.3d 428, 431 (7th Cir. 1995), has observed that the line separating a "merely unpleasant working environment" from an actionable one (one that is "deeply offensive and sexually harassing") can be

difficult to draw. Courts need not essay that fine-tuned effort where it does not bear on liability--where an employer would not be liable even if the conduct had crossed that line (Perry v. Harris Chernin, Inc., 126 F.3d 1010, 1013 (7th Cir. 1997)). In this case, regardless of whether Strojny's conduct was sufficiently severe or pervasive to trigger potential liability for IntraAction, Shaba's claim cannot survive summary judgment unless she provides some legal basis under which IntraAction may be held responsible. So it is to that inquiry that this opinion now turns.

In a hostile work environment case, the standard by which an employer's liability is measured depends largely on the supervisory status of the harasser. If the harasser lacks supervisory authority over plaintiff, Parkins v. Civil Constructors of Ill., Inc., 163 F.3d 1027, 1032 (7th Cir. 1998) (citations and internal quotation marks omitted) confirms that employers are liable "only when they have been negligent either in discovering or remedying the harassment. An employer's legal duty in co-employee harassment cases will be discharged if it takes reasonable steps to discover and rectify acts of sexual harassment of its employees." By contrast, if someone with supervisory authority over plaintiff creates the hostile environment, the employer may be vicariously liable under Title VII (Faragher, 524 U.S. at 807). But when the supervisor has not

taken any tangible employment action against plaintiff, the employer may avoid such liability by raising an affirmative defense, as explained in Faragher, id.:

> The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

Although Title VII does not itself give content to the concept of "supervisor," the common law of agency and the purposes of Title VII provide guidance in that respect (Parkins, 163 F.3d at 1033). Working from the foundation laid by Faragher and the same-day decision in Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998), our Court of Appeals has said that a supervisor for Title VII purposes is someone who "possesses the authority to _directly_ affect the terms and conditions of a victim's employment" (Hall v. Bodine Elec. Co., 276 F.3d 345, 355 (7th Cir. 2002) (emphasis in original)). Parkins, 163 F.3d at 1034 lists as examples of such authority "the power to hire, fire, demote, promote, transfer, or discipline an employee."

## Application of the Standards

IntraAction contends that Shaba has failed to create a genuine issue over Strojny's supervisory status because he lacked the ability to affect Shaba's terms of employment directly. According to IntraAction, it is immaterial that Strojny was designated as a supervisor, for the title did not come with any

8

real supervisory authority. Indeed, Parkins, 163 F.3d at 1033 recognized that "employees who are supervisors merely as a function of nomenclature" are distinguishable from "those who are entrusted with actual supervisory powers."

But that does not make Strojny's supervisory title irrelevant. Employers may be vicariously liable not only where an employee abuses his or her actual supervisory authority but also where the employee conveys the false impression--reasonably credited by the victim--that he or she had supervisory authority (Parkins, id.; see also Burlington Indus., 524 U.S. at 759-60). In such cases involving a co-worker's apparent authority, the court must evaluate whether the employer had done anything that led plaintiff to believe reasonably that the co-worker was in fact a supervisor. And where an employer has given one of its employees a supervisory title, it hardly seems farfetched for a factfinder to infer that the employee in fact has supervisory powers.

Here Shaba has identified a genuine issue as to Strojny's apparent supervisory authority. IntraAction admits that it was part of Strojny's job to supervise Shaba (I. Resp. to S. Add'l Facts ¶16). Shaba swears that someone (presumably Lekavich, although in her affidavit she does not specify who) told her Strojny was her boss (S. Aff. ¶9). And Shaba claims that Strojny told her that anything concerning her employment should go

through him first rather than to Lekavich directly (S. Aff. ¶21). In conjunction with the fact that Strojny had the title of "team leader," there is sufficient evidence for a jury to conclude reasonably that Shaba believed Strojny could affect her terms and conditions of employment, and that such a belief was itself reasonable.

But unless Strojny's sexual harassment culminated in a tangible employment action, IntraAction may still escape liability (and trial) under the earlier-quoted Faragher affirmative defense.[5] As Durkin v. City of Chicago, 341 F.3d 606, 611 (7th Cir. 2003) has made plain, "the employer is [strictly] liable for the harassment only if the harasser took a tangible employment action as part of his harassment." Surely Shaba's termination would qualify as a "tangible employment action" had Strojny participated in that decision, but Shaba admits that Lekavich--not Strojny--terminated her (S. St. ¶53). Besides, even when the evidence is viewed in the light most

---

[5] While IntraAction failed to set forth the affirmative defense in its Answer in accordance with Rule 8(c), Shaba herself failed to raise the forfeiture argument. As United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991)(per curiam) has put it, "claims of waiver may themselves be waived," and in any event Shaba has failed to show how she would be harmed if this Court addressed the issue--after all, she had notice and an opportunity to respond to the defense. As Carter v. United States, 333 F.3d 791, 796 (7th Cir. 2003) holds:

> The failure to plead an affirmative defense in the answer works a forfeiture only if the plaintiff is harmed by the defendant's delay in asserting it....

favorable to Shaba (as this Court must), she has failed to mount any challenge to the honesty of IntraAction's stated reason for firing her and has not shown even an arguable link between the harassment and the termination.

Shaba did not argue that her termination was in retaliation for her having asserted sexual harassment charges against Strojny, nor has she asserted that any other incident qualifies as a tangible employment action. Thus Shaba did not contend, for example, that Strojny's harassment made her work environment so intolerable that she was constructively discharged and that the constructive discharge amounted to a tangible employment action (see the discussion in Robinson v. Sappington, 351 F.3d 317 (7th Cir. 2003), agreeing that such a claim is viable where official actions by a supervisor have made the employment intolerable)--a contention that would not have survived scrutiny on the facts in this case in any event. So all that remains for decision is whether IntraAction has proved the Faragher affirmative defense as a matter of law. And this Court finds that it has.

IntraAction posted its written sexual harassment policy--a policy that included instructions on reporting harassment--in an employee break room (I. St. ¶4). Before Shaba complained of Strojny's behavior, no one at IntraAction had ever complained of sexual harassment. And when Shaba did report the harassment on April 11, IntraAction informed her that it would investigate the

11

allegations immediately (id. ¶33). According to Lekavich's affidavit (and this too is not controverted by Shaba), he met quickly thereafter with Srojny and several of Shaba's coworkers to investigate Shaba's charges (Lekavich Aff. ¶¶16, 19-20). Then, as stated earlier, on April 13 Strojny and Shaba signed an agreement stating that further sexual harassment would not be tolerated and that the two were to discuss only business matters with each other (I. St. ¶44). Lekavich moved Shaba to the other side of the building and permitted her to leave work early with no adverse financial consequences (id. ¶47).

Shaba admits that she did not experience any further sexual harassment after those measures were taken (I. St. ¶46). Nor does Shaba assert that IntraAction knew of, or even should have known of, Strojny's behavior before she spoke with Lekavich. Under those circumstances, it is clear beyond peradventure that the steps IntraAction took were "reasonably calculated to end the harassment" (Savino v. C.P. Hall Co., 199 F.3d 925, 933 (7th Cir. 1999)). No genuine issue of fact exists to pose any doubt in that respect.

As for the second element of the Faragher affirmative defense, Shaba offers no reason why she waited until April 11 to report any incidents of sexual harassment to Lekavich. According to the testimony of LaDonna Brown (at her Dep. 25), Shaba had told her that she was compiling a list of the things Strojny said

and did and was planning to talk with Lekavich about them. Given IntraAction's prompt action once Shaba did bring those things to its attention, Shaba should not be permitted to recover for harassment that could have been--and from IntraAction's quick response would have been--avoided had she reported Strojny sooner. Faragher, 524 U.S. at 806-07 (citations and internal quotation marks omitted) puts the matter in these terms:

> The requirement to show that the employee has failed in a coordinate duty to avoid or mitigate harm reflects an equally obvious policy imported from the general theory of damages, that a victim has a duty to use such means as are reasonable under the circumstances to avoid or minimize the damages that result from violations of the statute. An employer may, for example, have provided a proven, effective mechanism for reporting and resolving complaints of sexual harassment, available to the employee without undue risk or expense. If the plaintiff unreasonably failed to avail herself of the employer's preventive or remedial apparatus, she should not recover damages that could have been avoided if she had done so. If the victim could have avoided harm, no liability should be found against the employer who had taken reasonable care, and if damages could reasonably have been mitigated no award against a liable employer should reward a plaintiff for what her own efforts could have avoided.

## Conclusion

While a genuine issue of material fact exists as to Strojny's apparent supervisory authority, Shaba has nonetheless failed to demonstrate a genuine issue as to any fact that would even arguably undercut IntraAction's insulation from liability under the affirmative defense set forth in Faragher, 524 U.S. at 807. IntraAction swiftly and reasonably responded to Shaba's assertion of sexual harassment, and any arguably actionable harm

that Shaba suffered because of Strojny's harassment could have been avoided had she reported any such incidents to Lekavich with reasonable promptness--and in all events earlier than she did.

Shaba's claim under Title VII based on an assertedly hostile work environment thus fails as a matter of law. IntraAction's Rule 56 motion is granted, and this action is dismissed.

                                   /s/ Milton I. Shadur
Milton I. Shadur
Senior United States District Judge

Date: January 5, 2004